**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| G.F.F.; and J.G.O.; on their own behalf and on behalf of others similarly-situated, *Petitioners–Plaintiffs*, v. DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, *Respondents–Defendants*. | Case No. 1:25-cv-02886 **Petitioners-Plaintiffs' Motion for Class Certification** |

## PETITIONER-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

A class action is appropriate for this challenge to Respondents-Defendants ("Respondents")' invocation of the Alien Enemies Act of 1798 ("AEA"). The President has invoked a war power, the AEA, in an attempt to summarily remove noncitizens from the United States and bypass the immigration laws that Congress has enacted. That invocation is patently unlawful: It violates the statutory terms of the AEA; unlawfully bypasses the INA; and infringes on noncitizens' constitutional right to Due Process under the Fifth Amendment.[1]

Petitioners-Petitioners ("Petitioners") seek to certify the following nationwide class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens in U.S. custody who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation.

The proposed class readily satisfies the requirements of Rule 23.

---

[1] Petitioners' counsel conferred with counsel for Respondents prior to filing in a good-faith attempt to resolve the matters set forth in this motion but no agreement could be reached.

Numerosity is present, as demonstrated by the number of people in the United States that the government has admitted having designated as subject to the AEA Proclamation. *See* Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025), ECF No. 28-1 (identifying a total of 258 people in the United States whom the government believes are TdA members). All class members suffer the same injury: unlawful removal under the AEA, unlawful denial of their statutory rights to the removal and detention procedures contained in the INA, and violation of their right to due process. And the class raises common questions that will generate common answers, including whether the Proclamation and its implementation violate the AEA, the INA, and the statutory protections for asylum seekers. Petitioners' legal claims are typical of those whom they seek to represent. Petitioners are represented by experienced counsel with significant experience litigating class actions and cases involving the rights of noncitizens. And the proposed class satisfies Rule 23(b)(2) because Respondents have acted or refused to act on grounds that apply generally to the class by summarily removing noncitizens without statutorily and constitutionally mandated safeguards. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

The lack of notice to individuals and undersigned counsel underscores why certification of a district-wide class is necessary in this case. While the government has identified hundreds of individuals who could be removed subject to the Proclamation, counsel is aware of the identity and location of a handful of individuals who are detained in Orange County, New York, and Raymondville, Texas. Although the Supreme Court held that detainees subject to the Proclamation "are entitled to notice and an opportunity to challenge their removal," *Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *2 (Apr. 7, 2025), the government has made clear that it will immediately resume summary removals without giving class members any opportunity to contest

their designation, *see J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *30 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring). Proceeding with a district-wide class would thus serve the purpose of Federal Rule of Civil Procedure 23 by protecting the interests of the class, regardless of their location. *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

The Court should thus grant class certification under Rule 23(b)(2), appoint the Petitioners as Class Representatives, and appoint the undersigned as Class Counsel.

## BACKGROUND

### President Trump's Proclamation Invoking the AEA

On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." See Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua (Mar. 15, 2025).[2] Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15, despite making extensive preparations to remove individuals still in removal proceedings and seeking asylum.

But the United States is not at war, and the prerequisites for invocation of the AEA have not been satisfied. *See* 50 U.S.C. § 21. The President can invoke the AEA only in a state of "declared war," or when an "invasion or predatory incursion is perpetrated, attempted, or threatened against the territory of the United States by any foreign nation or government." *Id.* But

---

[2] *Available at*: https://perma.cc/ZS8M-ZQHJ.

it is plain that does not exist here. As a result, the government's attempt to summarily remove Venezuelan noncitizens exceeds the wartime authority that Congress delegated in the AEA; violates the AEA and due process for failing to provide notice and an opportunity to contest designations; and violates the process and protections that Congress has prescribed elsewhere in the country's immigration laws for the removal of noncitizens.

As borne out in the initial *J.G.G. v. Trump* litigation, the government began moving Venezuelan men and women whom they claimed to be TdA members to facilities in Texas to stage their removal, despite the fact that many were still in removal proceedings. Mere hours after the Proclamation was published, the government staged nearly 300 people for removal out of Texas, many of whom did not have final orders and were pursuing asylum and other humanitarian protections. That group included named Petitioners G.F.F. and J.G.O., two noncitizen Venezuelan men in immigration custody who were transferred from all over the country, transported with hundreds of other noncitizens from the El Valle Detention Facility in Texas to the airport, and nearly deported on planes that evening. Only the *J.G.G.* court's order has kept them safely in the United States but now with the order lifted, upon information and belief, individuals in the proposed class face imminent removal.

Although the government has identified 86 people in detention subject to the Proclamation and 172 more who are at liberty, *see* Cerna Decl. ¶ 6, ECF No. 28-1, undersigned counsel is, by chance, aware of the identity and location of only a handful of individuals in the United States who are designated under the Proclamation, including the two named Petitioners themselves (and three others who are in Texas), and one other represented individual in Texas who was nearly deported with the group on March 15. And Petitioners know of these individuals only because they have immigration counsel who were able to follow their clients' complicated transfers, contact

undersigned counsel, and happened to be among the large group that the government sought to remove without any lawful basis, purportedly under the AEA. No individuals have come to counsel's attention as having received advance notice that they are subject to the AEA.

**Named Petitioners and the Proposed Class**

As set forth in the Complaint, Petitioners are two noncitizens from Venezuela who are detained at Orange County Jail in New York and who, upon information and belief, are at imminent risk of removal under the issued Proclamation. *See* Comp. ¶¶ 11-12. Petitioners are representative of other noncitizens subject to Respondents' removal scheme because they are in civil detention by ICE, have been designated alien enemies under the Proclamation, and are thus at risk of removal based on the Proclamation. The proposed class does not include individuals who may be removed pursuant to other authorities.

ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*. The Second Circuit has emphasized that Rule 23 should be "given liberal rather than restrictive construction," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997).

While the Second Circuit has held "that the class action device should not be imported into collateral actions, at least in its full vigor as contemplated by Rule 23," it has recognized "the power of the judiciary . . . to fashion for habeas actions appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage." *U.S. ex rel. Sero v. Preiser*, 506

F.2d 1115, 1125 (2d Cir. 1974). Thus, in *Sero*, the court allowed "a multi-party proceeding similar to the class action" on behalf of young adults serving misdemeanor sentences, largely because the petitioners' claims were "applicable on behalf of the entire class" and "uncluttered by subsidiary issues." *Id.* at 1126.[3] Noting that "the precise provisions of Rule 23 are not applicable to these proceedings," the Court nonetheless found that consideration of the four Rule 23(a) prerequisites further bolstered its conclusion that class treatment was appropriate. *Id.* Courts in the Second Circuit have since recognized that the approach laid out by the *Sero* court is "both flexible and sensitive to the particular circumstances of a given case." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 450 (D. Conn. 2020); *Bertrand v. Sava*, 684 F.2d 204, 219 (2d Cir. 1982) (finding no error in lower court's decision, based upon requirements of Rule 23, "to certify a class of all Haitian aliens . . . who have requested political asylum and parole, but have remained in [the] respondent's custody") (internal quotation marks omitted)); *U.S. ex rel. Walker v. Mancusi*, 338 F. Supp. 311, 315–16 (W.D.N.Y. 1971) (employing Rule 23 to certify class of 38 inmates seeking habeas relief), *aff'd*, 467 F.2d 51 (2d Cir. 1972).

As set forth below, Petitioners' proposed class satisfies all four of the Rule 23(a) requirements.

Class Petitioners also demonstrate below that Respondents "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class,"

---

[3] The court of appeals noted several other "persuasive justifications" for affording class action treatment, including that "many of those serving reformatory sentences are likely to be illiterate or poorly educated," "most would not have the benefit of counsel to prepare habeas corpus petitions," and "considerable expenditure of judicial time and energy in hearing and deciding numerous individual petitions presenting the identical issue is thereby avoided." *Id.*

and therefore certification is appropriate under Rule 23(b)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Hyland v. Navient Corp.*, 48 F.4th 110, 119 (2d Cir. 2022).

## I.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)

### A.    The Proposed Class Is Sufficiently Numerous That Joinder Is Impracticable.

The proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 Newberg on Class Actions 2d, (1985 Ed.) § 3.05). The numerosity inquiry, however, is not "strictly mathematical" and takes into account the context of the specific case, "in particular whether a class is superior to joinder based on other relevant factors including." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.), as amended (Nov. 12, 2014). The relevant factors include: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members. *See id.* In addition, "joinder is difficult, if not impossible, where the identities of some class members are unknowable to plaintiffs, either because they have not been disclosed by defendants or because the class's composition is fluid and changing." *Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll.*, 331 F.R.D. 279, 290 (S.D.N.Y. 2019).

The proposed class easily satisfies the numerosity requirement. Several weeks ago, the government identified 86 people in detention subject to the Proclamation and 172 more who are at liberty. *See* Cerna Decl. ¶ 6, ECF No. 28-1. Based on the former number alone, Petitioners clear the numerosity bar, but there are likely to be more individuals entering the class as more of the 172 individuals are taken into ICE custody. Further, because ICE continues to "track[] the TdA

members who are amenable to removal proceedings," *id*., the class includes unknown, unnamed

future members. *See Westchester Indep. Living Ctr., Inc.*, 331 F.R.D. at 290.

Joinder is impracticable not only because of the sheer numbers, but also because class

members are frequently dispersed in different detention facilities prior to rapid staging for removal.

*J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (stating that joinder may be impracticable in

light of "fluidity" of custody, "the dispersion of class members across the country, and their limited

resources"); *see Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 388 (S.D.N.Y. 2000) ("the fluid nature

of the class further supports this Court's finding that joinder is impracticable"); *Martinez v. JLM

Decorating, Inc.*, No. 20-CV-2969 (RA), 2024 WL 1193605, at *4 (S.D.N.Y. Mar. 20, 2024)

(geographical dispersion relevant to impracticability of joinder).

For the foregoing reasons, Petitioners satisfy the numerosity requirement.

## B.    Members of the Class Have Common Questions of Law and Fact.

The claims asserted by the proposed class include common questions of law and fact that

satisfy Rule 23(a)(2). At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class

members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of

Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This requirement is satisfied if there is a single issue

common to all members of the class, so long as common questions are at the "core of the cause of

action alleged." *Ayzelman*, 238 F.R.D. at 363 (internal quotation marks omitted); *see also Marisol

A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) ("The commonality requirement is met if

plaintiffs' grievances share a common question of law or of fact."); *Trief v. Dun & Bradstreet

Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992) ("Commonality does not mandate that all class

members make identical claims and arguments, only that common issues of fact or law affect all

class members.").

Petitioners in this case have identified a single alleged practice—the unlawful removal of noncitizens under the Proclamation—that provides the basis for every class member's injury. *See Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). In addition to this common injury, numerous questions are common to the proposed class: whether the removals go beyond the power granted to the President under the AEA; whether the removals violate statutory and regulatory removal procedures; and whether Respondents' denial of meaningful procedural protections to challenge Petitioners' removal violates the AEA and the Fifth Amendment. Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. And while class members may present individualized defenses to their designation as alien enemies, this "fact does not destroy commonality." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 440–41 (S.D.N.Y. 1995) ("To the extent that there may be specific defenses against specific members of the class, they would not justify denying class action certification"; *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 364 (S.D.N.Y.2014) ("[I]t is axiomatic that '[t]he commonality requirement may be met when individual circumstances of class members differ,' as long as class members' 'injuries derive from a unitary course of conduct.'") (quoting *Espinoza*, 280 F.R.D. at 127).

Answering any one of these common legal questions will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Should the Court agree that Respondents cannot lawfully remove noncitizens under the Proclamation, all class members will benefit from the requested relief, which includes a declaration to that effect and an injunction preventing Respondents from conducting the removals.

### C.    The Petitioners' Claims Are Typical of Class Members' Claims.

Petitioners here have claims typical of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). The test for typicality does not require a complete identity of claims. Instead, the standard is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citation omitted). "When the same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met." *Stinson v. City of New York*, 282 F.R.D. 360, 371 (S.D.N.Y. 2012); *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (typicality may be met irrespective of factual variations in claims).

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Marisol A.*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." (citing *Falcon*, 457 U.S. at 157 n.13)). Each proposed class member, including the proposed class representatives, faces the same principal injury (unlawful removal), based on the same government policy (invocation of the AEA), which is unlawful as to the entire class because it violates the AEA itself, as well as the immigration laws and the Constitution. Petitioners thus share an identical interest in invalidation of" Respondents' implementation of removals pursuant to the Proclamation. Moreover, as with commonality, any factual differences that might exist here between Petitioners and proposed class members are not enough to defeat typicality. *See, e.g.*, *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 363 (E.D.N.Y. 2006) (typicality satisfied where "each class member was allegedly harassed or abused by debt collection letters that are substantially similar in nature to the ones received by plaintiffs," notwithstanding minor variations); *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 576 (N.D.N.Y. 2017)

(typicality satisfied where plaintiffs' claims were "based on the common application of certain challenged policies" involving confinement).

**D.    Petitioners and Petitioners' Counsel Will Adequately Protect The Interests Of The Proposed Class.**

Petitioners and undersigned counsel also fulfill the final requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement exists to ensure that the named representative will "have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Only a "fundamental" conflict can defeat a motion for class certification. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).

Petitioners will fairly and adequately protect the interests of the proposed class. Petitioners do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class members. Instead, Petitioners aim to secure relief that will protect them and the entire class from Respondents' challenged policy and to enjoin Respondents from further violations. Petitioners have no incentive to deviate from this class relief. Nor do Petitioners seek financial gain at the cost of absent class members' rights. There are no differences that create "conflicts of interest between named parties and the class they seek to represent." *Id.* (quoting *Amchen Prods., Inc. v. Windosr*, 521 U.S. 591, 625 (1997)).

Finally, proposed class counsel includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See* Galindo Decl. ¶¶ 1-8. As the

declaration makes clear, Proposed Class Counsel have been appointed class counsel in several successful class action cases concerning the rights of noncitizens.[4]

## II.    THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). Petitioners here seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Second Circuit has observed that "[c]ivil rights cases seeking broad declaratory or injunctive relief for a large and amorphous class . . . fall squarely into the category of class actions authorized by [Rule 23(b)(2)]." *Marisol A.*, 126 F.3d at 378 (citing *Jeanine B. by Blondis v. Thompson*, 877 F. Supp. 1268, 1288 (E.D. Wis. 1995)); *see also Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994) (Rule 23(b)(2) satisfied where plaintiffs "seek injunctive relief and they predicate the lawsuit on defendants' acts and omissions with respect to" the class). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class

---

[4] The Second Circuit has also recognized an "implied" requirement of ascertainability in Rule 23. *See In re Petrobras*, 862 F.3d 250, 257, 260 (2d Cir. 2017) ("a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries"). Here, the proposed class is readily ascertainable: membership in the class is defined by designation pursuant to the Proclamation—a clear and objective criterion—and identifying class members is administratively feasible, as demonstrated by the government's declaration in *J.G.G.* describing their identification of TdA members. *Supra*.

members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation and internal quotation marks omitted).[5]

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds that apply generally to the class by subjecting them all to the same Proclamation and attempting to summarily remove them without complying with the AEA, INA, and due process. Petitioners seek injunctive and declaratory relief that would benefit them as well as all members of the proposed class in the same fashion. The relief Petitioners seek is precisely the type of remedial action for which Rule 23(b)(2) was designed. *See, e.g.*, *Newberg on Class Actions*, *supra*, § 1:3 ("Rule 23(b)(2) is typically employed in civil rights cases and other actions not primarily seeking money damages. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit.").

The class is exactly the kind of class that Rule 23(b)(2) is meant to embrace. The class's interests are sufficiently related to warrant aggregate litigation. This is especially the case because members of the proposed class are in detention, often lack immigration counsel, and are indigent; they may also be detained in various facilities across the countries and are therefore very unlikely to bring their own individual suits. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class members than to force individuals to pursue piecemeal litigation, especially as the government has sought to swiftly deport people before they have a meaningful opportunity to seek judicial intervention.

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2), appoint the Petitioners as Class Representatives, and appoint the undersigned as Class Counsel.

---

[5] Although Rule 23(b)(2) requires an injunction to provide "relief to each member of the class," the relief need not "identical," only "beneficial." *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 97 (2d Cir. 2015); *Amara v. CIGNA Corp.*, 775 F.3d 510, 522 (2d Cir. 2014) (similar).

Dated: April 8, 2025

My Khanh Ngo*
Noelle Smith*
Oscar Sarabia Roman*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
nsmith@aclu.org
osarabia@aclu.org

Respectfully submitted,

/s/ *Daniel Galindo*
Daniel Galindo
Lee Gelernt
Ashley Gorski
Omar C. Jadwat
Hina Shamsi
Patrick Toomey
Sidra Mahfooz*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org

Amy Belsher
Robert Hodgson
Molly Biklen
New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300
abelsher@nyclu.org
rhodgson@nyclu.org
mbiklen@nyclu.org

*Attorneys for Plaintiffs-Petitioners*
*\*Pro hac vice motions forthcoming*

14