# EXHIBIT I

## DECLARATION OF DEBORAH FLEISCHAKER

I, Deborah Fleischaker, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1. I began working on immigration detention issues in 2011, when I was a career employee at the U.S. Department of Homeland Security's (DHS) Office for Civil Rights and Civil Liberties (CRCL). I was employed by CRCL from March 2011 until September 2021. One year of this (May 2019 - May 2020) was spent on a temporary detail to Senator Patrick J. Leahy's Judiciary Committee staff. An additional four months was spent on a temporary detail at the DHS Office of Policy and three months at U.S. Immigration and Customs Enforcement (ICE). I worked on immigration issues in all of these temporary assignments.

2. Between September 2021 and November 2023, I was employed as a political appointee by DHS's ICE. I was an Assistant Director at ICE and headed the Office of Regulatory Affairs and Policy from September 2021 to November 2022. From November 2022 until November 2023, I served as the Acting ICE Chief of Staff.

3. As the Assistant Director for the Office of Regulatory Affairs and Policy, I spearheaded policy and regulatory initiatives for the agency, with a significant focus on immigration enforcement, detention, and removal. In that position, I worked on a number of enforcement and detention policies, including Secretary Alejandro Mayorkas' enforcement priorities, the DHS sensitive locations and courthouse enforcement policies, and policies relating to the detention of pregnant people, crime victims, and parents.

4. I provide this declaration based on my personal knowledge and experience as well as my review of Khristopher J. Dawson's declaration.

5. Mr. Dawson's declaration indicates that space limitations prevent ICE from detaining certain Venezuelans with alleged TdA membership in the Southern District of New York.

6. Based on my extensive experience with ICE detention, ICE has limited detention options in the Southern District of New York, but has multiple options available to detain individuals within driving distance of the Southern District of New York.

7. Even with limited detention options in the Southern District of New York, Mr. Dawson's declaration does not provide enough information to reasonably conclude that ICE needs to move detainees covered by the court order out of the Orange County Jail.

8. Mr. Dawson's declaration states that there currently are eight individuals covered by the court order who are detained at the Orange County Jail.  He provides no evidence as to why they cannot continue to be detained there.

9. Mr. Dawson's declaration states that detainees are classified as low, medium, or high risk. There are 56 beds for low/medium detainees and 112 beds for medium/high detainees at Orange County Jail.  All 56 of the low/medium beds are full; 85 of the 112 medium/high beds are full.  Mr. Dawson's declaration does not specify the security level of G.F.F., J.G.O., or other alleged TdA members in the Southern District of New York.

10. While low/medium detainees may not be housed with high level detainees, individuals who are believed to be gang members would typically be classified as medium or high-risk. Those individuals could therefore be housed in one of the 26 available medium/high risk beds at Orange County Jail.

11. If G.F.F., J.G.O., and other alleged TdA members are classified as low/medium, ICE can still detain them at Orange County Jail.

12. ICE can transfer other individuals detained in the low/medium housing unit of the Orange County Jail and not covered by the court order to a different facility in order to free up bedspace for individuals covered by the court order. ICE moves detainees between facilities every day. In fact, there are several large ICE facilities within driving distance of Orange County Jail, including the Buffalo (Batavia) Service Processing Center.

13. Given the current temporary restraining order in place, I would expect ICE to prioritize maintaining bedspace at Orange County Jail for any individual covered by the court order. While there are other reasons to detain an individual at Orange County Jail, such as upcoming immigration proceedings in the jurisdiction, a court order requiring that an individual remain at Orange County Jail is the most important reason. Mr. Dawson's declaration does not explain why any of the low/medium risk detainees at Orange County Jail who are not covered by the court order could not be transferred elsewhere to accommodate the court order if low/medium bedspace is needed. Mr. Dawson's declaration makes clear that there is plenty of bedspace for medium/high risk detainees and no transfers would be needed.

14. Mr. Dawson's declaration simply lacks any evidence that it is necessary for ICE to move G.F.F., J.G.O., or other alleged TdA members outside of the Southern District of New York and that potential bedspace concerns could not be handled in other ways.

Executed on this 17th day of April, 2025 in Washington D.C.

                                                    __/s/_____

                                                                 Deborah T. Fleischaker